IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DRONE TECHNOLOGIES, INC., | § | |
| | § | Civil Action No. 2:14-cv-00111 |
| Plaintiffs, | § | |
| | § | Judge Arthur J. Schwab |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| PARROT S.A. and PARROT, INC. | § | |
| | § | FILED UNDER SEAL |
| Defendants. | § | |

### BRIEF IN SUPPORT OF DEFENDANTS PARROT S.A. AND PARROT, INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIMS

Defendants Parrot S.A. and Parrot, Inc. (collectively, "Parrot") move this Court for leave to file the attached Amended Answer and Counterclaims to the Original Complaint of Plaintiff Drone Technologies, Inc. ("DTI"), and for cause show the following:[1]

### I.     INTRODUCTION AND SYNOPSIS

Recent discovery proves that this case is a fraud on this Court. The patents-in-suit name as their "inventor" a person known as Diane Lee, but Diane Lee did not invent the subject matter of the patents. Contrary to her oath to the Patent Office, she does not even understand the patents or what they disclose. The real "inventor" is Diane Lee's husband, Bruce Ding, who identified his wife as the supposed inventor to avoid assignment obligations to his employer, Freescale Semiconductor—Taiwan, Ltd. ("Freescale"). Indeed, Mr. Ding identified his wife as the inventor on numerous other patent applications filed while he was employed by Freescale and its predecessor (Motorola) in a fraudulent scheme conducted over a period of over ten years.

---

[1] This brief, its exhibits, and the attached proposed pleading, are being filed under seal because they designated "Attorneys Eyes Only" under the Protective Order by Plaintiff and by third-party witness Freescale Semiconductor, Inc. Parrot does not believe that such designation is appropriate or warranted under the Protective Order, and will be filing a motion to de-designate these materials, but until that matter is resolved it is required to observe the designation and will proceed accordingly.

Mr. Ding engaged in an extensive campaign to cover his fraud, including posing as his wife in correspondence and lying under oath to try and cover his tracks.

On the basis of Mr. Ding's and Ms. Lee's inventorship fraud, Parrot moves to amend the answer to add a defense and counterclaim for unenforceability due to inequitable conduct, and to add more specificity to the already pled defense and counterclaim for invalidity for derivation under 35 U.S.C. § 102(f). The patents are invalid because Diane Lee simply is not the inventor. Rather, Bruce Ding is the correct inventor, and Ms. Lee derived the invention from him (if in fact she did anything at all). Both Mr. Ding and Ms. Lee committed fraud on the Patent Office by misrepresenting Ms. Lee as the inventor rather than Mr. Ding.

## II. PERTINENT FACTS

While a motion for leave to amend is typically an almost *pro forma* matter, the egregious nature of the fraud on this Court merits a more detailed explanation of why leave to amend is essential in this case.

DTI is owned by one person, Bruce Ding of Taiwan, a former engineer for Motorola and Freescale who now freelances as a patent consultant. Exhibit A, Transcript of Ding Deposition taken on Sept. 10, 2014 at 7-8, 15-16, 17, 98. The named inventor on patents in suit is Diane Lee, Bruce Ding's wife. Exhibit C, Transcript of Lee Deposition taken on Sept. 12, 2014 at 12:16-21.

Contrary to her inventorship oath, Ms. Lee's testimony in this case makes it clear that she did not in fact invent the subject matter of the patents-in-suit. She testified that she does not and did not understand the technical aspects of the patents. Exhibit C at 69-71; 74-76. Indeed, she only has rudimentary technical training and never worked in a technical position. Exhibit C at 9-12; 14-17; Exhibit B, Transcript of Ding Deposition taken on Sept. 11, 2014 at 114-15. She did not even write down her purported "ideas." Exhibit C at 39-40. She did not describe her

"invention" to the patent agents. Exhibit C at 40; Exhibit B at 115-16. Instead, Bruce Ding wrote up the purported invention and handled all the communications with patent agents. Exhibit C at 82; Exhibit B at 116, 120-22. Ms. Lee admits that she merely signed the inventorship oath after Mr. Ding reviewed the patent applications for her. Exhibit C at 40-41, 84-85. She does not read English language documents. *Id.* at 77-78. She also claims not to remember if she understood what she was signing when she signed the oath of inventorship. *Id.* at 84. No one other than Mr. Ding spoke with her about what the criteria for inventorship are. *Id.* at 42. She has never spoken with an attorney about inventorship; she left inventorship issues to Mr. Ding. *Id.* at 85-86. While she claims that it was her idea to have a remote control that detects movement, she concedes that she had no idea how to make that purported invention actually work. *Id.* at 66-68.

In reality, Bruce Ding is the actual "inventor" of the asserted patents in suit. Both Ms. Lee and Mr. Ding have testified that it was Mr. Ding who suggested the use of accelerometers and magnetometers to detect movement. *Id.* at 68-69; Exhibit B at 106-108. It was Mr. Ding who wrote up the invention, handled all of the communications with patent agents and attorneys on the patents in suit, and unsuccessfully attempted to build a prototype. *Id.* at 116, 120-22; Exhibit A at 29-30.

Why would Mr. Ding resort to such tactics, instead of simply listing himself as the inventor (or at least a co-inventor)? The reason is that at the material time, Mr. Ding was employed as an engineer by Freescale, a Motorola spinoff, where he worked on the development of numerous electronic devices. Critically, Mr. Ding's contract ▓▓▓▓▓ contained clear and broad obligations on Mr. Ding to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████ Had Ding truthfully listed himself as the purported "inventor" of the patents in suit, he thus would have been required to report and assign them to Freescale. Instead, by using his wife as a strawman, he sought evade those obligations and keep the purported inventions for himself.

Nor was this the only instance of Mr. Ding's perfidy in this regard. During Mr. Ding's tenure at Freescale and its predecessor, Ms. Lee—who has no technical training or experience—was similarly listed as the purported inventor on at least ten other United States and foreign patents, including U.S. Patent No. 7,599,017 ("Liquid crystal displaying monitor with detachable backlight and liquid crystal displaying television with detachable backlight"), U.S. Patent No. 7,380,338 ("Circuit board and manufacturing method thereof"); U.S. Patent No. 7,379,054 ("LCD and touch-control method thereof"); and U.S. Patent No. 7,019,619 ("Power line warning light apparatus"). Exhibit E (U.S. Pat. No. 7,599,017), Exhibit F (U.S. Pat. No. 7,380,338), Exhibit G (U.S. Pat. No. 7,379,054), and Exhibit H (U.S. Pat. No. 7,019,619).  Not coincidentally, Bruce Ding's work ████████████████████████
████████████████

Ms. Lee also admitted that she did not understand the technology behind her other purported "inventions." For example, Taiwan Patent Publication No. 200511702 is titled "Piezoelectric Inverter." Ms. Lee testified that she does not even know what a piezoelectric

inverter is. Exhibit C at 56. She didn't understand the "technical aspects" of any of her inventions. *Id.* 58, 60, 61-62, 69, 71, 73-76.

Mr. Ding has also demonstrated his willingness to lie, including under oath, in order to try and cover up his scheme. He created e-mail accounts under Ms. Lee's name, which he used to create correspondence that was purportedly from her. Exhibit B at 55-56. When his identity as "Diane Lee" was questioned in email correspondence, he refused to reveal his true identity. *Id.* at 96-99 and Exhibit I at 1. When asked about his departure from Freescale, he falsely testified that he was "laid off" and would not give any reasons for his departure. Exhibit B at 6-7. █████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

In short, discovery in this case reveals that Ding and Lee have been involved in a massive fraud on the United States Patent Office and foreign patent offices, as well as on Freescale. Parrot thus seeks leave to file an amended pleading that asserts allegations of inequitable conduct, a copy of which has been attached as Exhibit J to this brief.

## III. ARGUMENT

Rule 15(a)(2) mandates that a "court should freely give leave when justice so requires."[2] In assessing whether there is a substantial reason that warrants denying a request for leave to

---

[2] Under the Scheduling Order, Docket Item no. 32, the deadline to amend the pleadings (without cause) was June 20, 2014.

amend, the Court must consider the factors recognized by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962):

1)   undue delay;

2)   bad faith or dilatory motive;

3)   prejudice to the opposing party; and,

4)   futility of the amendment.

*Id.* at 182. "Where there is lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny [a motion for leave to amend]." *Ashe v. Corely*, 999 F.2d 540, 543 (5th Cir. 1993).

All four factors warrant granting the requested leave.

### A.   No Undue Delay/Bad Faith/Dilatory Motive

Parrot has not engaged in undue delay or acted in bad faith or with a dilatory motive in requesting leave to amend its answer. Allegations of inequitable conduct must be pleaded with specificity, and the evidence for the specific bases for Parrot's inequitable allegations came to light only recently, following the depositions of Bruce Ding and Diane Lee. The depositions took place only after Parrot filed two motions to compel.

The named inventor on the '071 and '748 Patents, Diane Lee, revealed in her September 2014 deposition her failure to disclose to the Patent Office during prosecution of the patents the involvement of her husband, Bruce Ding, as the true inventor. Admissions during Bruce Ding's deposition confirm the deliberate withholding of this relevant information from the Patent Office. Records subpoenaed from Freescale after these depositions proved that Bruce Ding lied at his deposition, and established the clear motive for his fraudulent scheme.

Because Bruce Ding is Drone's only employee and responsible for the withholding of information in this case, Parrot's motion of leave has not been unduly delayed by Parrot, and Parrot has not acted in bad faith or with dilatory motive.

### B.     Lack of Prejudice to Drone

If this Court grants Parrot's motion, there is no legally cognizable prejudice to Drone in allowing Parrot to assert inequitable conduct claims. As set forth above, Drone's only employee and husband to inventor Diane Lee, Bruce Ding, knew from the onset of the filing of the U.S. patent applications of the inventor deception to the Patent Office, but only recently admitted to the underlying facts in his September 2014 deposition. He similarly lied during his deposition regarding the circumstances of his employment with and termination by Freescale, and Parrot has only recently been able to obtain proof from Freescale that establishes his untruthfulness.

To the extent that there is any arguable prejudice to Drone, it results from Bruce Ding's involvement in not disclosing relevant information to the Patent Office and lying at his deposition. Drone should not be allowed to profit from the bad faith acts of its only employee.

### C.     Non-Futility of the Requested Amendment

The proposed inequitable conduct defense and counterclaim sought by Parrot is well grounded in settled case law and, as detailed in this motion, supported by specific identified evidence. If the Court finds for Parrot on inequitable conduct, the patents-in-suit will be rendered unenforceable in their entirety.

Because the patents-in-suit were derived from an inventive entity other than the named inventor, they are invalid under § 102(f). As detailed above, there is no genuine dispute that Diane Lee is not sole inventor, and that Bruce Ding at least contributed to the invention. Further, inventorship requires conception, and conception requires definite and permanent idea of complete, operable invention including all limitations, as well as corroboration. *Univ. of*

*Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1297 (Fed. Cir. 2009) ("Conception is the touchstone of inventorship...."""). Ms. Lee's wish or desire to have a remote control that detects movement is not conception, and there is no evidence corroborating any such conception. *Fiers v. Revel*, 984 F.2d 1164, 1171 (Fed. Cir. 1993) ("description that represents a wish, or arguably a plan for obtaining an invention does not constitute complete conception"); *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) ("An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue").

Ding and Lee thus misrepresented to the Patent Office the inventorship of the inventions covered by the patents in suit. There is no question that such misrepresentation is material. *Robert Bosch, LLC v. Pylon Mfg. Corp.*, 700 F. Supp. 2d 625, 645 (D. Del. 2010) ("A Failure to disclose the true inventorship of a patent is certainly a material omission"); *see also Board of Education ex rel. Florida State University v. American Bioscience, Inc.*, 333 F.3d 1330, 1344 (Fed. Cir. 2003) (a patent applicant has a duty to assure that "only true inventors" are named in a patent application and that failure to do so may result in a finding of inequitable conduct); *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363 (Fed. Cir. 2002) (holding a patent unenforceable due to inequitable conduct where two named inventors deliberately concealed a true inventor's involvement in the conception of the invention and 'engaged in a pattern of intentional conduct designed to deceive the attorneys and patent office as to who the true inventors were...'). Their deceptive intent is also clear, in that they sought to avoid having to assign the patents to Freescale, and repeatedly lied to attempt to cover their tracks. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011)

(holding that the inequitable conduct doctrine evolved from fraud and embraces an even broader scope of misconduct).

## IV.     CONCLUSION

Parrot's request for leave satisfies the standards of Rule 15(a).  In the interests of justice, Parrot respectfully requests that the Court grant it leave to file the First Amended Answer and Counterclaim, attached as Exhibit J to this brief, and for such other entitled.

Dated:  October 22, 2014                                   Respectfully submitted,

/s/ James E. Hopenfeld
**James E. Hopenfeld (*pro hac vice*)**
Attorney-in-Charge
CA Bar No. 190268
E-mail: Hopenfeld@oshaliang.com
Tammy J. Terry (*pro hac vice*)
Texas Bar No. 24045660
SDTX No. 562006
E-mail: Terry@oshaliang.com
OSHA LIANG LLP
909 Fannin Street, Suite 3500
Houston, TX  77010-1034
Phone: (713) 228-8600
Fax: (713) 228-8778

Eric G. Soller, Esquire
PA I.D. #65560
EGS@Pietragallo.com
Firm I.D. #834
The Thirty-Eighth Floor
One Oxford Centre
Pittsburgh, PA  15219
Phone: (412) 263-1836
Fax: (412) 263-4242

COUNSEL FOR DEFENDANTS
PARROT S.A. AND PARROT, INC.

## CERTIFICATE OF SERVICE

I certify that on October 22, 2014, the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *James E. Hopenfeld*
James E. Hopenfeld
