IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DRONE TECHNOLOGIES, INC.,

Plaintiff,                              14cv0111
                                        **ELECTRONICALLY FILED**

v.

PARROT S.A., PARROT, INC.,

Defendants.

## MEMORANDUM OPINION RE: PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT (DOC. NO. 78)

Defendants, through their counsel,[1] have engaged in a systematic campaign to willfully defy this Court's Orders, prevent Plaintiff from receiving evidence necessary to develop its case-in-chief on infringement, delay the prosecution of this case, and substantially increase the costs, efforts, and time expended by Plaintiff to complete discovery and prepare for trial on liability issues. Defendants' legal and factual positions as to whether they have complied with the Court's Orders, or why they have not complied, are ever-changing, inconsistent, and appear to be designed to thwart justice in this case.[2] Defendants' continual motions practice, lack of candor

---

[1] This comment does not apply to Defendants' well-respected local Pittsburgh counsel because it appears to this Court (from the briefing and hearings) that Defendants' in-house counsel ("Head of Legal") from France and chief trial counsel from Texas are directing and controlling the litigation strategy and tactics.

[2] The factual determinations contained within this Memorandum Opinion are based upon the Court's review of the filings in this case, witness testimony received during the hearing on Plaintiff's Motion to Show Cause Why Defendants Should Not be Held in Contempt, and oral argument during the same. Witness testimony has been weighed by the Court based upon its ability to judge the credibility of the witnesses and the weight their testimony deserves. These determinations have been guided by the appearance and conduct of the witnesses, the manner in which they testified, the character of the testimony given, and by evidence or testimony to the contrary.

with the Court, and other conduct, has effectively impeded "the just, speedy, and inexpensive determination [of this] action . . . ."  Fed.R.Civ.P. 1.

## I. Introduction

The proceedings in this case have been fraught with disagreements over the most basic disclosure and discovery matters.  In just over nine (9) months, the Court has had to intervene because of disputes related to initial disclosures, Alternative Dispute Resolution ("ADR"), and depositions, among other routine matters.  The most persistent dispute between the Parties relates to the scope and the method of production of Court-ordered initial disclosures.  Defendants have been required to produce specific information as part of their initial disclosures, as ordered by this Court and in compliance with the Local Patent Rules of this District Court, since July 9, 2014.  Doc. No. 48.  After numerous unsuccessful attempts to evade this obligation through motions practice, and over four months later, Defendants still have not complied with this Court's Orders.

The Parties have filed almost a dozen Motions related to standard pre-trial proceedings, and the Court has ruled accordingly:

- Defendants' Motion to Stay Pending *Inter Partes* Review (May 7, 2014, Doc. No. 17);
- Which was denied by this Court on May 19, 2014 (Doc. No. 29);
- Defendants' Motion for Clarification of the Protective Order to Include a Limited Patent Prosecution Bar (May 27, 2014, Doc. No. 35);
- Which was denied by this Court on May 30, 2014 (05/30/14 Text Order);
- Defendants' Motion to Bifurcate Discovery and Trial (June 27, 2014, Doc. No. 44);
- Which was denied by this Court on July 9, 2014 (07/09/14 Text Order);

2

- Plaintiff's Motion to Compel Initial Disclosure Documents (June 19, 2014, Doc. No. 41);

- Which was granted by this Court on July 1, 2014: Defendants were ordered to comply on or before July 9, 2014 (Doc. No. 48);

- Plaintiff's Motion to Compel Attendance at the ADR [Session] of a Decision Maker Who Has Full Settlement Authority (July 1, 2014, Doc. No. 49);

- Which was denied by this Court on July 8, 2014 (Doc. No. 54);

- Defendants' Emergency Motion for Reconsideration of this Court's July 1, 2014 Order (July 3, 2014, Doc. No. 51);

- Which was denied by this Court on July 8, 2014 (07/08/2014 Text Order);

- Defendants' Motion to Compel the Deposition of Mr. Bruce Ding (July 8, 2014, Doc. No. 57);

- Which was denied by this Court on July 9, 2014 (07/09/14 Text Order);

- Plaintiff's Motion to Compel Defendants to Obey this Court's July 1, 2014 Order (July 22, 2014, Doc. No. 61);

- Which was granted by this Court on July 25, 2014: Defendants were given until August 13, 2014, to comply with the July 1, 2014 Order (Doc. No. 63);

- Defendants' Emergency Motion to Modify the Protective Order (August 1, 2014, Doc. No. 64);

- Which was denied by this Court (August 7, 2014, Doc. No. 70);

- Defendants' Motion to Compel the 30(B)(6) Deposition of Drone Technologies, Inc. and the Depositions of Mr. Bruce Ding and Ms. Diane Lee (August 11, 2014, Doc. No. 72);

- Which was granted in part and denied in part by this Court on August 19, 2014 (Doc. No. 81);

- Defendants' Motion for Relief from the Court's Order Dated July 25, 2014, or in the Alternative, for a Stay Pending a Petition for Writ of Mandamus (August 13, 2014, Doc. No. 74); and

- Which was denied by this Court (August 14, 2014, Doc. No. 77).

Presently before this Court is Plaintiff's Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt.  Doc. No. 78.  A hearing was held on October 23, 2014.  Doc. No. 99.  Karin Wittkotter, Parrot SA's Head of Legal, and Francois Callou, a Drone Project Manager at Parrot SA, testified during this hearing.  Doc. No. 99.

## II. Background of the Western District of Pennsylvania's Participation in the Patent Pilot Program and Local Patent Rule 3.1

### A. Patent Pilot Program

The United States District Court for the Western District of Pennsylvania enacted Local Patent Rules, which took effect on April 1, 2005, and have been applied to any "civil action in which the infringement, validity or enforceability of a utility patent is an issue . . . ."  LPR 1.4.  This District is one of the 14 United States District Courts that have been chosen to participate in a 10-year patent cases pilot program designed "to encourage enhancement of expertise in patent cases among district judges."  Pub.L.No. 111-349- Jan. 4, 2011, 124 Stat. 3674, 28 U.S.C. § 137.  In January, 2011, the Honorable Gary L. Lancaster, former Chief Judge of the Western District of Pennsylvania, appointed himself, the Honorable Joy Flowers Conti (now Chief Judge of the United States District Court for the Western District of Pennsylvania), the Honorable Nora Barry Fischer, and this Court, as "Designated Patent Judges" to hear cases arising under any Act of Congress relating to patents.  *In re: Implementation of Patent Pilot Program*, Misc. No. 11-00283, Oct. 12, 2011.  Since that time, the Honorable Cathy Bissoon and the Honorable Mark R. Hornak have also been designated as Patent Judges for the Western District of Pennsylvania.

### B.   Local Patent Rule 3.1

The United States District Court for the Western District of Pennsylvania's Local Patent Rules apply to all patent cases pending before this Court, and are promulgated as authorized by, and subject to, the limitations of Federal Rule of Civil Procedure 83.  LPR 1.1.

Rule 3.1 of the Local Patent Rules governs initial disclosures and provides, in relevant part, that:

> No later than fourteen (14) days before the Initial Scheduling Conference, the parties shall exchange the initial disclosures required by Fed.R.Civ.P. 26(a)(1) ("Initial Disclosures").

*       *       *

> With the Initial Disclosures of the party opposing a claim of patent infringement, such party ***shall produce or make available for inspection and copying***, among other items:

> Source code, specifications, schematics, flow charts, artwork, formulas, drawings or other documentation, including sales literature, sufficient to show the operation of any aspects or elements of each accused apparatus, product, device, process, method or other instrumentality identified in the claims pled of the party asserting patent infringement; and

> A copy of each item of prior art, of which the opposing party is aware, that allegedly anticipates each asserted patent and its related claims or renders them obvious.  (emphasis added.)

### C.  Standard Patent Protective Order

This District's Local Patent Rules also provide for a standard protective order that governs the exchange of information that the parties believe are "Confidential Information" or

5

"Confidential Attorney Eyes Only."  Appendix LPR 2.2.  The Standard Patent Protective Order

sets forth procedures designed to ensure that confidential information and attorney work product

is protected and only accessed by the appropriate individuals.  Id.  Specifically, the Order

provides that "information designated as Confidential Information or Confidential Attorney Eyes

Only Information may only be used for purposes of preparation, trial and appeal of this action

and . . . may not be used under any circumstances for prosecuting any patent application, for

patent licensing or for any other purpose."  Id. at ¶ 6.  In essence, the Standard Patent Protective

Order provides for the designation and maintenance of information, who may access confidential

information and/or attorney work product, the disclosure and use of confidential information, and

available remedies for violations of the Protective Order.  Appendix LPR 2.2.

The Parties in this case utilized the Standard Patent Protective Order.

### III. Procedural Posture

This case centers on the alleged infringement of two United States Patents (United States

Patent Nos. 7,584,071 ("the '071 patent") and 8,106,748 ("the '748 patent")).  Doc. No. 1.

These patents relate to remote control systems, which consist of a remote controller and a

remote-controlled device such as a remote-controlled toy airplane or helicopter.  Id. at ¶ 11.

Plaintiff, a Taiwanese company, alleges that Defendants, a French public limited company and a

related New York corporation, have sold and/or imported the Parrot AR.Drone and the Parrot

AR.Drone 2.0 ("the Parrot drones") in the United States.  Id. at ¶¶ 5-6, 14, 16.  The Drones are

controlled by software applications for Android and Apple devices.  Id.  Plaintiff contends that

the use of the Parrot Drones in the United States of America infringes the '071 and '748 patents.

Id. at ¶¶ 30-39.

On May 7, 2014, Defendants filed a Motion to Stay Pending *Inter Partes* Review, in which they moved this Court to stay this litigation pending the outcome of an *Inter Partes* review of the relevant patents by the United States Patent and Trademark Office.  Doc. No. 17. Defendants alternatively moved this Court to transfer the case to the United States District Court for the Eastern District of Michigan.  Id.  Plaintiff opposed this Motion in its entirety.  Doc. No. 23.  This Court denied Defendants' Motion to stay due to pending proceedings before the United States Patent and Trademark Office.  Doc. No. 29.  The Court also found that Defendants had not presented a compelling reason to disturb Plaintiff's choice of venue and denied Defendants' alternative request for relief.  Id.

In late May, 2014, Defendants filed a Motion to Clarify the Protective Order to Include a Limited Prosecution Bar.  Doc. No. 35.  Defendants argued in their Motion that they would "be required to produce extremely sensitive documents relating to the control systems for Parrot's accused AR.Drone products no later than June 11, 2014."  Doc. No. 36, 3.  Defendants moved this Court to order that trial counsel for Plaintiff, who received confidential technical information from Defendants in this litigation, be barred from directly or indirectly assisting administrative counsel for Plaintiff in the *Inter Partes* Review before the United States Patent and Trademark Office.  Doc. No. 36.  Plaintiff opposed this Motion.  Doc. No. 37.  This Court denied Defendants' Motion.  05/30/14 Text Order.[3]

On June 19, 2014, Plaintiff filed a Motion to Compel Initial Disclosure Documents, in which Plaintiff moved this Court to order Defendants to produce:

---

[3] To grant Defendants' Motion would have greatly increased the expense of this case to Plaintiff and substantially delayed the prosecution of this case because Plaintiff would have been required to retain new and additional patent attorneys.

> [A]ll source code, specifications, schematics, flow charts, or other
> technical documentation relating to the operation of the accused products
> (Parrot's AR.Drone, AR.Drone 2.0, MiniDrone, and Bebop Drone) and
> any associated remote-controller software applications, including all
> versions and drafts of Defendants' FreeFlight software app.

Doc. No. 41-4.  Defendants opposed this Motion and contended that the requested disclosures are not relevant to Plaintiff's claims and are not required under the United States District Court for the Western District of Pennsylvania's Local Patent Rule 3.1.  Doc. No. 43.  Defendants posited that Plaintiff's purpose in filing the Motion to Compel was to stall the litigation.  Id. at 6. The Court granted Plaintiff's Motion to Compel on July 1, 2014, finding that the initial disclosures shall cover the AR.Drone,  AR.Drone 2.0, the MiniDrone, and Bebop Drone.  Doc. No. 48.  The Court ordered Defendants to "produce" the documents (not merely "make available") by July 9, 2014.  Id.

Two days later, Defendants filed an Emergency Motion for Reconsideration of this Court's July 1, 2014 Order, presumably because they understood that "production" of information relating to the MiniDrone and Bebop Drones was required, as well as to the AR.Drone and AR.Drone 2.0, rather than simply making the information "available."  Doc. No. 51.  Defendants moved this Court to modify its July 1, 2014 Order as to both: (1) the methodology of production - - to allow Defendants to make source code available for inspection under Federal Rule of Civil Procedure 34 with "adequate protections" under Federal Rule of Civil Procedure 26(b)(2) and (c), and produce electronically stored technical documents on a rolling basis beginning on July 9, 2014, and (2) the scope of production - - to order that Defendants were not required to produce documents with respect to the "MiniDrone" or "Bebop Drone."  Doc. No. 51, 1.  The Court denied this Motion.  07/08/2014 Text Order.  Therefore,

Defendants remained obliged to comply with the Order of Court on Plaintiff's Motion to Compel of July 1, 2014, by "produc[ing] all source code, specifications, schematics, flow charts, or other technical documentation relating to the operation of the accused products (Parrot's AR.Drone, AR.Drone 2.0, MiniDrone, and Bebop Drone)," by July 9, 2014.  Doc. No. 48.

On July 22, 2014, Plaintiff filed a Motion to Compel Defendants to Obey this Court's July 1, 2014 Order.  Doc. No. 61.  Plaintiff moved this Court to order Defendants to comply with the Court's previous Order requiring "produc[tion]" of specified information.  Id.  In response, Defendants contended that they "ha[d] produced, or [were] producing imminently, all of the documents necessary to comply with the Court's July 1 Order and more."  Doc. No. 62, 1.  On July 25, 2014, the Court entered an Order requiring Defendants to fully comply with the Court's Order and extended the deadline for their compliance to on or before August 13, 2014.  Doc. No. 63.  The Court noted that it appeared "that Defendants simply ignored this Court's Order and have continued to refuse to ***provide documents*** to Plaintiff on the Court-ordered schedule."  Id. at 2 (emphasis added).  The Court also ordered that an officer or director of Defendant file a written confirmation, under oath and penalty of perjury, that Defendants have fully complied with the July 1, 2014, Order on or before August 15, 2014.  Id.  The Court ordered that "[i]f Defendants again fail to comply, Plaintiff shall file a Motion to Show Cause why Defendants Should Not be Held in Contempt, and the Court will promptly schedule a hearing thereon."  Id.

Seven days later, on August 1, 2014, Defendants filed an Emergency Motion to Modify the Protective Order.  Doc. No. 64.  Defendants moved the Court to modify the Standard Patent Protective Order to include additional safeguards to protect against unauthorized use of its source code.  Id.  Specifically, Defendants sought to restrict (and possibly track) counsel for Plaintiff's access to the "source code material" to "stand-alone computer(s)," located in the office of

9

Defendants' "outside counsel" between 9:00a.m. and 6:00p.m (unless Plaintiff provided notice of need for documents outside of these times "not less than three (3) business days in advance"), or through a "secure connection." Doc. No. 64-1. Defendants' proposed method included the provision that Plaintiff would be unable to make any copies without Defendants' permission or as the Court ordered. Id. at ¶¶ 10-11. Plaintiff opposed this Motion. Doc. No. 67. The Court found that Defendants' Motion appeared to be "be based upon Defense Counsel's belief that Plaintiff's counsel are incapable of completing routine discovery or conducting themselves in accordance with the confidentiality and other provisions designed to protect both parties during the process." Doc. No. 70, 1. The Court denied Defendants' Motion and found that it was "another attempt to have the Court reconsider its prior Orders on discovery and/or add additional burdens to Plaintiff during discovery." Id. The Court noted that all previous Orders remained in effect, including the Order that Defendants fully comply by August 13, 2014. Id. at 2.

On August 13, 2014, the day Defendants were required to comply with this Court's Orders, Defendants filed a Motion for Relief from this Court's Order Dated July 25, 2014, or in the Alternative, for a Stay Pending a Petition for Writ of Mandamus. Doc. No. 74. A Declaration of Francois Callou, a Project Manager of Defendant Parrot S.A., was attached to the brief in support of this Motion. Doc. No. 75-1. Defendants contended that they were now "able to comply with the Court's July 25 Order in large part to the extent that Parrot has produced nearly 80,000 documents (nearly 1 million pages) and is in the process of producing an additional 500GB of data relating to the Accused Products," but Defendants sought "to be excused from complying with the Court's July 25 Order in its entirety, because such compliance would cause extreme prejudice to [Defendants] and would amount to a fundamental miscarriage of justice." Doc. No. 75, 1-2. These statements evidence Defendants' belief that they were not

in compliance with the Orders of Court.  On August 14, 2014, this Court denied Defendants'

Emergency Motion, finding that although the Court is "sensitive to Defendants' desire to protect

confidential information," Defendants' proposed modification "may permit Defendants to have a

window into Plaintiff's discovery and trial strategies."  Doc. No. 77, 3-4.

To date, Defendants have not filed a "written confirmation" by an officer or director of

the companies that they have fully complied with the Court's Order of July 1, 2014, as required.

On August 18, 2014, Plaintiff filed a Motion for Order to Show Cause Why Defendants

Should Not be Held in Contempt.  Doc. No. 78.  The Court ordered briefing from the Parties and

scheduled a Contempt Hearing for September 18, 2014.  08/19/14 Text Order.  The hearing was

rescheduled by the Court to October 23, 2014.  08/28/14 Text Order.

On September 24, 2014, Defendants filed two (2) Petitions for Writ of Mandamus in the

United States Court of Appeals for the Federal Circuit.  *In re: Parrot S.A.*, 14-156, 14-157.

Defendants contend that Writs of Mandamus should issue because: (1) this Court exceeded its

authority by compelling Defendants to produce confidential source code without a showing of

relevance and without adequate protections; and (2) this Court abused its discretion by refusing

to grant Defendants' Motion to Transfer this case to the United States District Court for the

Eastern District of Michigan.  Id.

The October 23, 2014, Evidentiary Hearing on Plaintiff's Motion to Show Cause

consisted of the direct and cross-examination Karin Wittkotter and Francois Callou and argument

from Plaintiff's Counsel and Defendants' Counsel as to whether Defendants are in compliance

with Orders of Court, and if not, what sanctions would be appropriate.  Following the hearing,

the Court ordered the Parties to file a brief, not to exceed 15 pages, on the applicability of the

*Poulis* factors, and a brief, not to exceed 10 pages, on specific sanctions. Doc. No. 99. The Court has received and reviewed the Parties' briefs. Doc. Nos. 102-105.

On October 28, 2014, the United States Patent and Trademark Office Patent Trials and Appeals Board issued institutional decisions in both *inter partes* review proceedings. The Board ordered the institution of *inter partes* review as to all claims in both patents based on obviousness or anticipation over prior art. IPR2014-00730, Paper No. 8, 2; IPR2014-0732, Paper No. 8, 2.

## IV. Standard of Review

Federal Rule of Civil Procedure 37(b)(2)(A) provides that a party may seek sanctions in the District where an action is pending if a party or the party's officer, director, or managing agent fails to obey an order to provide or permit discovery. The Rule specifies that the Court may issue "further just orders" including:

   (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

   (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

   (iii)   striking pleadings in whole or in part;

   (iv)   staying further proceedings until the order is obeyed;

   (v)    dismissing the action in whole or in part;

   (vi)   rendering a default judgment against the disobedient party; or

   (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A)(i)-(vii).

The United States Court of Appeals for the Third Circuit has enumerated the factors to be balanced by a District Court when assessing the propriety of sanctions. Namely: (1) the extent

of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). It is not necessary that all of the *Poulis* factors be met in order to impose sanctions, including default judgment. *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).

## V.  Discussion

Plaintiff has filed a Motion to Show Cause why Defendants Should Not be Held in Contempt because of Defendants' persistent refusal to comply with this Court's July 1, 2014 Order. Doc. No. 78. Defendants' defiance of their Court-ordered discovery obligation continues to this day, over four months after the Court first ordered Defendants to produce specific information. Plaintiff contends that unless this Court finds Defendants in contempt and imposes sanctions, it "will be forced to prosecute this case without Defendants' fundamental initial disclosure documents required under the Local Patent Rules and this Court's Orders." Doc. No. 79, 2. Plaintiff posits that the "most severe in the spectrum of sanctions" must be seriously considered to penalize Defendants and to deter others who might be tempted to take similar action in future cases. Id. (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1976) and *Mindek*, 964 F.2d at 1374).

Defendants' refusal to produce discovery, to which this Court has found that Plaintiff is entitled, has impeded the just, speedy, and inexpensive determination of this matter in contradiction of the Federal Rules of Civil Procedure. Although Defendants have argued that Plaintiff seeks to stall proceedings, Defendants' own actions have inhibited Plaintiff's

prosecution of this case.  Defendants' refusal to accept that the Parties' dispute will be adjudicated by this Court based upon discovery the Court has ordered be produced (not materials Defendants believe to be relevant), has caused needless motion practice, extensive Court involvement, and has distracted from the core of this patent litigation.  Doc. No. 43, 6.  If Defendants were really "eager to resolve this case promptly and on the merits," as they argue, they would have complied with the Court's repeated Orders to come into compliance with their discovery obligations.  Defendants' willful failure to do so leads this Court to the inevitable conclusion that Defendants seek to delay and impede this litigation.  Defendants' obstructionist actions cannot be allowed to continue and merit severe sanctions.

     *1. Defendants' Personal Responsibility*

     The Court has endeavored to provide the litigants with a process that will allow for a just, fair, and expeditious resolution of their disputes, in line with the Court's inherent authority to manage its docket.  However, Defendants have proactively and steadfastly refused to comply with Orders of Court, which has resulted in extensive motions practice and repeated Court involvement over what should be routine discovery matters.  Defendants contend that they "accept[] full responsibility for [their] actions."  Doc. No. 104, 8.

     Defendants were first ordered to produce initial disclosures on July 1, 2014.  Doc. No. 48.  Karin Wittkotter, who is in charge of this litigation, testified that she understood that "the Court's July 1 Order required Parrot to produce, among other things, all source code for Parrot's AR Drone, AR Drone 2.0, MiniDrone, and Bebop Drone, even if [Defendants] did not agree with

it." Transcript, pg. 19, lines 20-24.[4]  The Court's Order on Plaintiff's Motion to Compel Initial

Disclosures specified that Defendants "produce" the specified information.  Doc. No. 48.  The

plain meaning of this Order is that Defendants were required to "produce" the information, rather

than "make available for inspection and copying." As stated above, Defendants understood this

"production" requirement, as was made clear in their Emergency Motion to Modify the

Protective Order.  Doc. No. 64.  If the Court had intended to permit Defendants to have the

option to either produce the information or allow access to it, the Order would have included

either option in its Order.  It did not.

Despite the Court's Order, Defendants chose "to offer an access to the source code, but

not to provide a copy of the source code . . . ." Transcript, pg. 24, lines 18-19.  Defendants

testified that they understood that the Court rejected Defendants' argument that they should be

permitted to provide Plaintiff with access to information, rather than producing the information.

Thus, Defendants were aware that providing access to information on their terms, rather than

actually producing the same, would not comply with the Court's Orders.  Transcript, pg. 26, lines

15-19.  Wittkotter testified that Defendants will not produce source code (as ordered by a Court

of the "first degree") until a "further jurisdiction" compels them to do so.  Id. at pg. 28, lines 1-6.

As previously stated, Defendants have still not produced a digital source code as ordered.

Transcript, pg. 104, lines 22-25.  Defendants chose not to produce all of the source code required

and instead have stated that they will comply with the Orders of Court when, and only if,

Defendants are "sure" that they "will really be forced to do that"; presumably after the United

---

[4] Wittkotter testified that she is akin to a solicitor and serves as "Head of Legal" at Parrot SA.
Transcript, pg. 13, lines 12-16.  As such, she is "in charge of legal matters of the company []
inside."  Id. at lines 19-20.

States Court of Appeals for the Federal Circuit (a court of the "second degree") issues its ruling on the pending Motions for Petitions for Writs of Mandamus.  Transcript, pg. 35, lines 24-25.

Thus, the Court finds that Defendants are personally involved in the decision to not produce required initial disclosures and, therefore, are responsible for their failure to comply with this Court's discovery Orders.

2. *Prejudice Caused to Plaintiff by Defendants' Failure to Comply with this Court's Orders*

Defendants' refusal to comply with these Orders of Court has:

- prevented Plaintiff from reviewing the information prior to the October 24, 2014, claim construction hearing;
- caused Plaintiff to expend substantial funds, time, and energy on Motions to Compel and responses in opposition to Defendants' Motions on settled discovery issues; and
- inhibited Plaintiff's ability to prepare this case for trial.

Plaintiff is no closer to obtaining complete initial disclosures today than it was on June 19, 2014.  This has inevitably prejudiced Plaintiff and its ability to prosecute its claims. Defendants' actions during the discovery phase of this litigation is unprecedented and presents this Court with the first instance of such tactical and pervasive defiance in a patent case. Although the Court is "intimately familiar with the disruptions and difficulties caused by the behavior," the full extent of the prejudice caused to Plaintiff is unknown because the required initial disclosures have still not been produced.  *Shahin v. Delaware*, 345 Fed.Appx. 815, 816-17 (3d Cir. 2009).  This factor weighs heavily towards the imposition of severe sanctions.

*3.  History of Dilatoriness/Conduct was Willful/in Bad Faith*

Defendants' failure to produce relevant discovery and their failure to comply with numerous Court Orders is the result of a conscious and deliberate strategy of impediment and delay.  Defendants have sought to stay this litigation on several occasions, without success.  Doc. Nos. 17, 74.  Defendants' most recent position is that they believe that they are in compliance with the Court's Orders because they have made arrangements to permit access to their source code on their terms, which they deem to be sufficient.  Transcript pg. 7, lines 13-14.  Defendants argue that Plaintiff has rejected their offer to allow access to its source code on their terms, rather than produce the source code, because Plaintiff sought to provoke the Motion for Sanctions.  Doc. No. 87, 5.  However, Defendants are aware that they have not complied with this Court's Order requiring "produc[tion]" of specific information, and Defendants have willfully chosen not to come into compliance therewith.  Doc. No. 48.

The present Motion for Order to Show Cause is the result of Defendants' ever-changing positions that appear to have been designed to evade their discovery obligations and impede the progress of this litigation.  Defendants have vacillated between the positions that they cannot comply with the Orders of Court; they will comply with the Orders, but only on their own terms; and/or they will not comply with the Orders of Court.  These shifting positions, highlighted below, indicate that Defendants' non-compliance is a litigation strategy rather than a legitimate position:

- June 27, 2014: Defendants have produced all documents required by Local Rule 3.1 (Doc. No. 43);
- July 1, 2014: Defendants are ordered to "produce" information relating to the operation of the AR.Drone, AR.Drone 2.0, MiniDrone, and Bebop Drone (Doc. No. 48);

17

- July 3, 2014: Compliance with the Court's Order would be "unduly burdensome;" Defendants will provide access to source code, but not as to MiniDrone or Bebop Drone, which Defendants contend are not relevant to this litigation (Doc. No. 52);

- July 24, 2014: Defendants have produced or will "produc[e] imminently, all of the documents necessary to comply with the Court's July 1 Order and more." Defendants request an extension of time to comply (Doc. No. 62, 1); and

- August 1, 2014: Defendants cannot "produce a digital copy of Parrot's highly confidential trade secret source code without creating an undue risk of inadvertent copying or corruption." Defendants noted that if the Court denied Defendants' request to modify the Standard Patent Protective Order, they would be faced with the "'Hobson's choice' of choosing either to comply with the Court's July 25 Order and risk severely compromising its business, or to maintain security of its highly confidential source code and risk violating the Court's July 25 Order" (Doc. No. 65, 5).

Defendants moved the Court yet again to reconsider its decision.

- August 13, 2014: Defendants then were "able to comply with the Court's July 25 Order," but sought "to be excused from complying with the Court's July 25 Order in its entirety . . . ." Doc No. 75, 1.

- During the Hearing on Plaintiff's Motion to Show Cause, Wittkotter testified that after August 15, 2014 (2 days after Defendants' production of initial disclosures was due), Defendants still needed to continue to produce information and "were still struggling to produce." Transcript, pg. 49, lines 4-5, 13-14. This statement and Defendants' earlier contention that they were able to come into compliance or would be in compliance "imminently" directly contradict each other; both cannot be true.

18

As set forth above, Defendants have taken various positions, many of which are inconsistent, in an attempt to skirt their discovery obligations.  Defendants have characterized their compliance with the Court's Orders as:

- unduly burdensome;
- possible, but will not occur;
- accomplished;
- will occur, but only on their own terms; and
- will occur, but only if the Court of Appeals for the Federal Circuit "force[s]" them to do so.

Defendants' latest argument is that they have complied with this Court's Orders because they have set up procedures for Plaintiff's Counsel to access its source code.  While Local Patent Rule 3.1 provides that parties may "produce or make available for inspection and copying" initial disclosures, the Court's initial Order on this issue required Defendants to "produce" the initial disclosures.  Doc. No. 48.  The Court explicitly rejected Defendants' arguments that providing access be deemed sufficient because this procedure would be burdensome on Plaintiff and may permit Defendants and their Counsel to track Plaintiff Counsels' review of the source code.  Doc. Nos. 48 and 70.  As such, the Court's Orders explicitly require that Defendants "produce" these documents, not merely provide access to the information.  Doc. Nos. 48 and 70.[5]

Defendants' testimony and written submissions demonstrate that they are aware that they have not complied with Orders of Court.  Wittkotter testified that Defendants did not file a

---

[5] The Court notes that while Defendants contend that they have made arrangements for Plaintiff and its Counsel to review source code, there has been no contention that the initial disclosures have been both made "available for **inspection and copying**."  Fed.R.Civ.P. 26 and 34; LPR 3.1.  Defendants' proposed arrangements still appear to be in contravention of Federal Rules of Civil Procedure 26 and 34 and Local Patent Rule 3.1, because it would only include "limited copying" of "any relevant portions of the code," and under Defendants' knowledge and control.  Doc. No. 87, 7.

19

written confirmation of compliance by August 15, 2014, as ordered, because they had not complied with the Court's Order.  Transcript, pg. 50, lines 9-13 (Q: "So, Parrot couldn't file the required written confirmation by an officer or director because Parrot couldn't state that it had actually complied with the Court's Order by August 15th; is that right?" A: "Um, yes.").  No such confirmation has ever been filed, evidencing Defendants' continued non-compliance.  Transcript, pg. 7, lines 13-14; Transcript, pg. 48, line 14-pg. 49, lines 1-5.  Further, Defendants' filings demonstrate that they understand that the Court's Orders require "production" of information and are able to produce the information, but have chosen not to do so.  As early as August 1, 2014, Defendants evidenced that they understood that they were required to produce their source code, rather than merely providing access to it.  Doc. No. 65,4 (Defendants moved this Court to allow them to provide access to source code, rather than "produce a digital copy.").  Defendants have sought to "be excused" from complying with this Court's Orders, which evidences that Defendants are well aware that they are not in compliance with the Court's Orders.  Doc. No. 75, 1-2.

The Court finds that Defendants knew their refusal to produce the source code contravened this Court's Orders and that Defendants consciously chose to violate these Orders.

Defendants persist in arguing the wisdom and clarity of the underlying Order, even at this late stage.  Throughout the Motions practice detailed above and during the hearing on Plaintiff's Motion to Show Cause, Defendants have argued that the MiniDrone and Bebop Drone are not relevant to this litigation and, therefore, they are not required to produce initial disclosures as to these devices.  Defendants' submissions to this Court do not evidence that they believe that they are in compliance, but rather that they, not this Court, know what should be required to be produced and how it should be provided to opposing counsel.  This flagrant refusal to comply

20

with an Order that Wittkotter concedes was "crystal clear," is disrespectful to this Court and fellow Judges of the United States District Court for the Western District of Pennsylvania. Transcript, pg. 38, line 25-pg. 39, lines 1-2.

Although Defendants now attempt to lay blame for their current predicament on both this Court and Plaintiff, the Court finds that Defendants have attempted to use their compliance (or lack thereof) with this Court's Orders to their advantage. Prior to filing their Petitions for Writs of Mandamus, Defense Counsel informed Plaintiff's Counsel that Defendants would comply with the Court's Orders if Plaintiff withdrew its Motion for Order to Show Cause Why Defendants Should Not be Held in Contempt. Defendants' Exhibit 14, Tab 15.

An email dated September 18, 2014, from James E. Hopenfeld, counsel for Defendants, to Gene Tabachnick and Richard Ting, counsel for Plaintiff, evidences Defendants' tactic in this respect. The email was provided to the Court as Tab 15 to Defendants' Exhibit 14 during the hearing on Plaintiff's Motion to Show Cause, and includes the following language:

> If Drone Technologies agrees to withdraw its motion to show cause, Parrot is prepared to: 1) ***produce all*** of the source code and documents Drone has contended to be subject to the District Court's orders (source code would be provided on an encrypted USB key and designated Attorneys' Eyes Only under the Protective Order); and, 2) to refrain from filing its petitions for writ of mandamus. Parrot makes this offer notwithstanding the substantial prejudice to Parrot in providing the source code and documents as Drone contends were ordered by the Court.
>
> If Drone Technologies agrees to this, please let us know by noon EDT this Friday, September 19. Parrot's offer expires at this time.

Defendants' Exhibit 14, Tab 15 (emphasis added).

As detailed in the above email and other filings, Defendants have been able to comply with the Court's Orders by producing the required information.  However, they have consciously and willfully chosen to defy the Court's Orders in order to delay this litigation, attempt to obtain some tactical advantage, or for some other unknown reason.  Defendants' production of initial disclosures, including source code, is a requirement of this Court's Orders, not a bargaining chip to be used against Plaintiff.  Defendants have acted in bad faith.  Defendants' failure to comply with this Court's Orders was a contemplated tactical decision and warrants the imposition of serious sanctions.

### 4.  *Effectiveness of Available Sanctions*

Defendants' refusal to comply with this Court's Orders has necessitated that sanctions be imposed, since the Court's repeated Orders to comply with discovery obligations are apparently of no effect.  As stated above, during the hearing on Plaintiff's Motion for Order to Show Cause Why Defendant Should Not Be Held in Contempt, Wittkotter testified that Defendants will not comply with the Court's Order until a ruling is made by the United States Court of Appeals for the Federal Circuit on their pending Petitions for Writs of Mandamus.  As such, the Court concludes that monetary or other similar sanctions would not prompt Defendants to produce the required information or adequately account for or correct the prejudice caused to Plaintiff.  As a result thereof, more serious sanctions must be considered because lesser sanctions would be ineffective and Defendants' conduct can no longer be countenanced.[6]

---

[6] Defendants' failure to provide complete initial disclosures is analogous to a party's failure to preserve discoverable information in anticipation of litigation.  Proposed Federal Rule of Civil Procedure 37(e) would provide for sanctions including dismissal of the action or entry a default judgment based upon a finding that the party acted with the intent to "deprive another party of the information's use in litigation."  A party's willful or bad faith failure to preserve electronic information and a party's failure to provide complete initial disclosures have the same effect; the

The Court is mindful that any sanction imposed must not only attempt to undo the prejudice caused to Plaintiff, but must also penalize Defendants and deter others from taking similar action.  *Nat'l Hockey League*, 427 U.S. at 642-43; *Mindek*, 964 F.2d at 1374.  Federal Rule of Civil Procedure 37(b)(2)(A) provides for sanctions that may be imposed in this case.  Available sanctions such as: prohibiting Defendants from supporting defenses or opposing claims; staying this litigation until Defendants obey the Court's Orders; dismissing Plaintiff's action; or treating Defendants' actions as contempt of court pursuant to Rule 37 would not meet the goals of sanctions; nor would imposition of a sanction that Defendants proposed.  Fed.R.Civ.P. 37(b)(2)(A)(ii),(iv), and (vii).  Defendants find themselves in the present situation because of their own actions.  They may not continually violate Orders of Court and then "remedy" the situation through a self-imposed sanction that would still preclude Plaintiff from prosecuting this case in the manner it sees fit.  The Court desired for this case to be resolved on the merits.  However, the Court is now constrained to find that only the most severe sanctions will be effective in this exceptional case.

Default judgment is an available sanction for failure to comply with a Court's discovery order(s).  *Hoxworth v. Blinder, Robinson &  Co.*, 980 F.2d 912, 919 (3d Cir. 1992).  The United States Court of Appeals for the Third Circuit has upheld District Courts' entries of default against defendants for "extreme" abuses of discovery.  *See eg. Ramada Franchise Sys., Inc. v. Patel*, No. 03-3494, 2004 WL 1246566 (3d Cir. June 8, 2004) (the Court of Appeals for the Third Circuit affirmed the district court's order entering default judgment against defendants for

---

opposing party in both cases is deprived of all of the information that may be necessary to prosecute its case.  The Federal Rules of Civil Procedure anticipate that default judgment may be an appropriate sanction in both situations.

failure to serve Rule 26 initial disclosures or respond to discovery requests); *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142 (3d Cir. 1990) (the Court of Appeals for the Third Circuit affirmed a district court's entry of default judgment against Defendants for their "willful, unjustified" and bad faith refusal to comply with two orders of court).

Other District Courts have entered default judgment against a defendant for the party's failure to comply with discovery orders. *ASD Specialty Healthcare, Inc. v. New Life Home Care, Inc.*, No. 3:11-0068, 2013 U.S. Dist. WL 1482777, at *6 (M.D. Pa. Apr. 10, 2013) (defendants' "failure to produce discovery undermine[d] the plaintiff's ability to gather necessary information to prosecute its claims" and left the Court with "no other option" but default judgment and dismissal of counterclaims); *Superior Composite Structures, LLC v. Parrish*, No. 10-4066-KES, 2013 U.S. Dist. 2013 WL 2898114 (D.S.D. June 13, 2013)(the district court entered default judgment against a *pro se* defendant for his failure to comply with the Court's orders to fully answer interrogatories and requests for production of documents); *Gray Casualty & Surety Company v. Holton*, No. 09-2840AV, U.S. Dist. 2011 WL 679930, at *2 (W.D. Tenn. Jan. 18, 2011), *report and recommendation adopted*, No. 09-CV-02840-STA-DKV, U.S. Dist. 2011 WL 549862 (W.D. Tenn. Feb. 9, 2011) (United States Magistrate Judge recommended to the District Court Judge that defendants' failure to file initial disclosures or fully respond to interrogatories and requests for production for over four months should result in an entry of default judgment); *United States of America v. Davenport*, No. CV-08-158-FVS, U.S. Dist. 2009 WL 6922575, at *3, *6 (E.D. Wash. Dec. 17, 2009), *report and recommendation adopted*, No. CV-08-158-FVS, U.S. Dist. 2010 WL 723767 (E.D. Wash. Feb. 26, 2010) (United States Magistrate Judge recommended that default judgment be entered against *pro se* defendant for his failure to comply with "basic civil discovery.").

24

The Court acknowledges that default judgment is a drastic sanction.  However, under the present circumstances, the Court finds that lesser sanctions would not reflect the seriousness of Defendants' conduct, provide Plaintiff with needed relief to correct the resulting prejudice, or deter future litigants from similar actions.

     *5.  Meritoriousness of the Claim or Defense*

The Court finds that this factor is neutral because both Parties have advanced *prima facie* cases under the Federal Rule of Civil Procedure 12(b)(6).

## VI. Conclusion

Defendants believe that they (not the Court) should determine the scope (*i.e.*, relevancy) and the method of production of discovery.  On the other hand, the Court believes that part of its inherent responsibility to control this litigation includes the authority to require production of initial disclosures.

Defendants have stated that they will not comply with this Court's Orders unless "forced" to do so.  This resistance continues despite extensive Court intervention on this issue over the last four months.  Defendants' refusal to comply has stymied Plaintiff's prosecution of this case.  Further Orders of Court or monetary or other sanctions would be ineffective in obtaining Defendants' compliance with its discovery obligations.  Therefore, based upon a balancing of the six (6) *Poulis* factors, the Court is constrained to strike Defendants' Answer and dismiss Defendants' counterclaims and enter default judgment against Defendants on liability as to infringement of the '071 and '748 patents.  An appropriate Order follows.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties