IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DRONE TECHNOLOGIES, INC.,

       Plaintiff,                    14cv0111

                                       **ELECTRONICALLY FILED**

          v.

PARROT S.A., PARROT, INC.,

       Defendants.

## MEMORANDUM ORDER OF COURT RE: POST-TRIAL DAMAGES MOTIONS
## (DOC. NOS. 378, 380, 382, 383, 386)

### I. Introduction

*A.     Jury Determination of Damages Due to Plaintiff for Defendants' Infringement*

After unprecedented disruptive and dilatory discovery actions by Defendants, the Court

was constrained to enter default judgment against Defendants as to infringement of two United

States Patents. The only issue presented during the recent three-day jury trial was the amount of

damages, if any, due to Plaintiff for Defendants' infringement.

After deliberating for approximately seven (7) hours over two (2) days, the jury

determined that Plaintiff was due $3,783,950 for damages from January 31, 2012 through June

30, 2015 ("past damages") and $4,016,050 for damages from July 1, 2015 through expiration of

the patents (7,584,071 patent ("the '071 patent")-March 2028; 8,106,748 ("the '748 patent")-

November 2030) ("future damages"–advisory jury verdict). Doc. No. 371.

*B.     The Jury's Damages Verdict was Based Upon the Georgia-Pacific Factors*

Before the trial commenced, based upon the Court's Pretrial Orders, the Parties worked

to draft proposed preliminary jury instructions, motions in limine, evidentiary objections,

proposed final jury instructions, and a proposed verdict form such that the trial would be solely

focused on a determination of damages derived from the application of relevant legal principles to relevant evidence. Doc. No. 127. As agreed-to by the Parties, the jury was instructed from the Court's first remarks and throughout the trial that their deliberations and eventual verdict must be based upon fifteen (15) enumerated factors ("*Georgia-Pacific* factors"). The importance of these factors was impressed upon the jurors by:

- providing the factors in a written document prior to preliminary jury instructions;
- reference by attorneys and witnesses to the factors throughout the trial;
- the Court's instruction at several points to re-read the provided factors; and
- the Court's preliminary and final jury instructions

Once seated, the jury was provided background on patents and patent litigation through a video from the Federal Judicial Center and then instructed by the Court that:

> [i]t has already been established that Parrot is liable for infringing Drone Technologies' '071 and '748 patents as to four specific models of Parrot Drone Products. Those four Parrot drone models are called: 1. AR.Drone; 2. AR.Drone 2.0 (pronounced "A R Drone Two Point Oh"); 3. Minidrones; and 4. Bebop Drones. The only issue for you to decide is: What is the proper amount of damages to be paid by Parrot to Drone Technologies, if any?

Doc. No. 320, pg. 2.

Following these preliminary instructions, the Court provided each juror with a two-page document entitled "Reasonable Royalty-Relevant Factors" that set forth factors to guide the jury's determination of a reasonable royalty. Doc. No. 308. These fifteen factors were agreed-to by the Parties and were derived from applicable case law. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D. NY. May 28, 1970). The Court emphasized the importance of these factors to the jury and explained that:

> . . . I give this to you because I want you to read it now, we will read it one more time before we start the trial. But as the evidence comes in, I want you to see why you are hearing that evidence, because the evidence will relate to one or more of these factors as you see documents, as you hear testimony . . . I realize that it is not generally the vocabulary you use in your day-to-day life, but I just thought it was important that you see those criteria, those factors, prior to hearing all the

evidence. You will see them again, but I just know that you are going to get three days of evidence and I want you to see what the evidence relates to, and you will obviously hear the opening and closing statements of counsel as to what they think the facts show as to those particular items.

Doc. No. 347, pgs. 85-86.

The jury was instructed that the enumerated factors were not the only potentially applicable factors but, rather, were "some of the kinds of factors" that may be considered along with "any other factors which in your mind would have increased or decreased the royalty Parrot would have been willing to pay and Drone Technologies would have been willing to accept, acting as normally prudent business people." Doc. No. 308, pg. 2.

Once the trial began, the proceedings were consistently focused on the *Georgia-Pacific* factors, which is demonstrated by the following:

- the attorneys explicitly referenced the *Georgia-Pacific* factors during opening arguments (Mr. Hopenfeld: "First, what is the invention and how does it differ from the technology that came before it? You have those *Georgia-Pacific* factors in front of you in your notebooks. You might want to get them out. If you have got your pen, you might want to think about circling factor No. 9. Take a look at factor No. 9. That's the advantages of the invention over the prior art." Doc. No. 347, pg. 112, lines 8-14);

- the expert witnesses relied on the factors during their testimony ("I believe the Court handed out as part of the jury's binder the actual 15 factors, we call them the *Georgia-Pacific* factors. But what the *Georgia-Pacific* factors really are is they provide an economic framework for people like myself who are in this business to – kind of a checklist for us to go through a determine what type of information should be looking at, what type of analysis should we be doing, what are the important considerations that go to determining what a reasonable royalty would be or what the amount of damages that would be appropriate in a given case." Doc. No. 347, pg. 204, lines 1-11);

- the Court reminded the jury of the factors before transitioning to the Defendants' case-in-chief ("I'd like you to take a few moments and re-read the two-page document again in front of you so that that's in front of your mind as we begin the Defendants' case. And I would ask that you give the Defendants' part of the case, called the Defendants' case-in-chief, the same careful attention that you paid to the Plaintiff's case." Doc. No. 357, pg. 2, lines 12-17); and

- the attorneys centered their presentation of closing arguments on the *Georgia-Pacific* factors (Mr. Tabachnick: "*Georgia-Pacific* factors No. 9 and 10. You remember Mr. Barnes talked about the advantages of the old over the new. All the comments about it being a breakthrough in the flying business, flying devices business, this absolute control mode and accelerometer mode, that it being revolutionary, that it be – the Popular Science article where it said it drastically simplifies piloting. All of these things that demonstrate, that are evidence of the fact that this is valuable technology." Doc. No. 361, pg. 13, lines 9-17)

Once the jury was ready to begin deliberations, the Court again instructed the jury members that the *Georgia-Pacific* factors were to be employed to determine damages. ("Now we are going to review the reasonable – the relevant factors that apply to a reasonable royalty determination. You will be familiar with these by now.") Doc. No. 361, pg. 61, lines 9-11.

In sum, all aspects of the trial were focused on the *Georgia-Pacific* factors and the jury's verdict necessarily reflects the jurors' appropriate consideration of these guiding principles.

C. *The Jury was Presented with Competing Testimonial and Documentary Evidence*

The presentation of the Parties' opinions as to an appropriate damages awards was primarily presented through three expert witnesses; namely, Ned Barnes for Plaintiff and John Jarosz and Francois Callou for Defendants. Doc. Nos. 187, 195, 198-199. The difference between the expert witnesses' damages calculations was approximately $24 million. Mr. Barnes testified for Plaintiff that total damages due for Defendants' infringement was $24.8 million,

while Mr. Jarosz opined that a lump sum payment of $680,000 was the highest appropriate sum. Doc. Nos. 187 and 344. These estimates were presented to the jury and calculated as follows:

**Mr. Barnes' estimate: ($24.8 million)**

Reasonable royalty rates of:

- $16/unit for A.R. Drone and Bebop
- $6/unit for the MiniDrone

Multiplied by the number of sales

- Through June 2015=$7.5 million
- Estimated through expiration of the patents=$17.3 million

**Total =$24.8 million**

**Mr. Jarosz's estimate: ($680,000)**

Past Damages-Reasonable royalty rate of:

- $.50/unit for patents at issue (based upon a collaboration agreement between Defendants and Thomas Barse)

Multiplied by the number of sales

- Through June 2015=$647,670
- Reduced to no more than $400,000

Future Damages-Reasonable royalty rate of:

- $.10/unit (based upon a collaboration agreement between Defendants and Thomas Barse)

Multiplied by the estimated number of sales

- Estimated from June 2015 through the expiration of the patents=$467,343
- Reduced to no more than $280,000

**Implied total payment=$1.1 million**

**Reduced total=$680,000**

The jury was informed how to incorporate these expert witness opinions into its separate calculation of damages. Specifically, the Court instructed that the opinions of expert witnesses may be given the weight each juror believed it deserved, and, if a determination was made that

the expert witness's opinion was based on insufficient education or experience or not supported by sound evidence, the juror "may disregard the opinion entirely." Doc. No. 361, pg. 52, line 23-pg. 53, line 5. An expert witness's testimony could also be rejected, in whole or in part, based upon a finding that the expert had lied in any material portion of his testimony. Id. at pg. 53, lines 17-24.

Because the jury was faced with such varied damages calculations, the Court further instructed the jury members that they were not bound to adopt the damages calculation of one expert witness or the other. Rather, the Court stated that:

> [n]ow that you've heard the opening statements, to get ourselves re-centered, there has already been a determination of infringement of the two patents. It's your job then to determine the damages in the case. You've heard one number from the Plaintiff, you heard another number from the Defendant[s]. But you, applying those factors, determine what the number will be. So you're not bound by the Plaintiff's version or the Defendants' version. You are the fact finder and you're the ones that will be applying the law to facts that you find and will then determine the dollar amount.

Doc. No. 347, pg. 119, lines 1-11.

This point was reiterated again the next day as to the expert witnesses' evaluation of the value of the patented technology when the Court notified the jury members that:

> [y]ou've heard some evidence and some argument that the two functionalities have great value. You have the other side – that's the Plaintiff's position. Defendants' position is they have little or no value. You have to make that decision. You have to make that evaluation of whether it's A or B or somewhere in between. That's part of what you're going to hear today into tomorrow.

Doc. No. 358, pg. 7, lines 2-8.

In sum, the jury was presented with two very different methods of calculating damages as well as widely different resultant opinions as to an appropriate award. The competing expert

witness opinions reflect the inability or unwillingness of the Parties to settle this business dispute and necessitated that a jury determine the final outstanding issues between the Parties.[1]

       D.      *The Jury's Verdict was Driven by Credibility Determinations*

Faced with such diametrically opposed evidence in terms of the Parties' damages estimates, the jury necessarily had to undertake numerous credibility determinations in arriving at a unanimous verdict. Credibility determinations present a jury with one of its most difficult tasks. Doc. No. 361, pg. 51, lines 12-14 ("This is your toughest job in many ways, to judge the credibility and believability of witnesses.").

The core nature of these credibility disputes precluded an entry of summary judgment and necessitated that a jury resolve the matter, as reflected in the Court's Memorandum Order Re: Defendants' Motion for Partial Summary Judgment. Doc. No. 228, pgs. 2-3 (The Plaintiff's expert witness's report and anticipated testimony "is sufficient to allow a jury to assess a reasonable royalty damages award. Further, genuine issues of material fact exist that could influence a jury's determination of damages, including the credibility of the Parties' experts.").

Credibility disputes existed on both sides of the case and, importantly, included whether Defendants had the capability to "design-around" the infringing features and could have implemented non-infringing products that were so substantially similar to the infringing technologies "that the user [wouldn't] even notice it" within four weeks and at a total cost of approximately $20,000.00. Doc. No. 357, pgs. 142-146.

Other underlying necessary credibility determinations included the measure of importance of Plaintiff's patents in Defendants' products (as demonstrated by Plaintiff through testimony and documents created prior to litigation and obtained from Defendants and by

---

[1] The Parties attempted to mediate their dispute on at least two occasions, neither of which were successful. 7/17/14 (Report of mediation by Robert Lindefjeld)(Doc. No. 60); 3/26/15 (Report of mediation by David Oberdick)(Doc. No. 235).

Defendants through a demonstration of their products and its packaging), the relevance of past licensing agreements between Defendants and third-party companies, the impact of the removal of the infringing features on sales, and the testimony of the expert witnesses.

The Court noted the dichotomy between the Parties' positions and the difficulty of the jury's task because "[t]his is a hard case in many ways, a lot of issues, a lot of conflicting testimony" and, further noted the importance of the jury's role because "the parties have been unable to resolve the matter among themselves and have decided that they want the [eight] of you to decide for them."  Doc. No. 361, pg. 2, lines 7-10.

In conformance with the model civil jury instructions of the United States Court of Appeals for the Third Circuit, the jury was instructed, at length, how to undertake credibility determinations, including those of expert witnesses.  Doc. No. 361, pgs. 51-54.  The Court's instructions informed the jury that they were to be guided by the appearance and conduct of the witness, the manner in which the witness testified, the character of the testimony given, and the evidence or testimony to the contrary.  Doc. No. 361, pg. 51, lines 19-22, pg. 52, line 14-pg. 53, line 5.

As previously noted, the jury's verdict did not wholly conform to either Plaintiff's or Defendants' request for damages.  Therefore, the jury's balanced verdict necessarily represents the resolution of numerous credibility determinations.  Further, the verdict was based upon the application of *Georgia-Pacific* factors and the presentation of testimony and documentary evidence, which allowed the lay jury members to employ the necessary tools to finally resolve the Parties' business dispute.

## II. Plaintiff's Post-Trial Damages Motions

Presently before this Court are the following five (5) motions, all of which have been filed by Plaintiff, disposition of which may affect the jury's damages award and the Court's entry of a Final Judgment Order:

- Motion for Royalty for Future Infringement (Doc. No. 378);
- Motion for Fees under Rule 37 (Doc. No. 380);
- Motion for an Order Awarding Pre-Judgment Interest (Doc. No. 382);
- Renewed Motion for an Exceptional Case Finding and an Award of Attorneys' Fees (Doc. No. 383); and
- Motion for Post-Judgment Interest (Doc. No. 386)

Each of these Motions is now fully briefed and ripe for disposition. Doc. Nos. 378-383, 385-386, 388-392, 394-398.

### A. *Motion for Royalty for Future Infringement (Doc. No. 378)*

The Parties continue to drastically disagree as to both the proper amount of damages due to Plaintiff for future infringement and whether the amount of any award should be determined by the jury or the Court.

The distinct positions as to the amount of the award are reflected in the opinions of the damages experts who testified extensively during trial. As previously noted, Plaintiff's expert witness testified that, in his opinion, reasonable royalty rates were $16 per unit for the A.R. Drone and Bebop and $6 per unit for the MiniDrone, which results in future damages of $17,326,867.00. Doc. No. 187. Defendants' expert witness testified that a much lower rate of 10 cents per unit was appropriate, which results in a calculation for future infringement $467,343.00 and a reduced total of $280,000 after application of various factors. Doc. No. 344.

Due to the Parties' disagreement as to the availability of future damages, inclusion of a question on future damages on the jury's verdict form was extensively discussed during pretrial proceedings. Plaintiff originally proposed that past and future damages be combined such that

the sole question presented to the jury would be "the proper amount of damages due to Drone Technologies, Inc." Doc. No. 262. Defendants, in their proposed verdict form, also did not differentiate between past and future damages, but rather included separate questions as to each patent for "the total amount of damages you award to Plaintiff[]." Doc. No. 261. Consistent with these proposals, the first draft of the Court's Jury Verdict Form Re: Damages did not distinguish between past and future damages. Doc. No. 289. At this stage, Defendants' expert witness Jarosz had only submitted an expert report as to damages for past infringement. Doc. No. Doc. No. 199.

The Court discussed the expert witnesses' opinions on past and future damages and whether a determination of future damages should be submitted to the jury during the April 16, 2015 Preliminary Pretrial Conference. Doc. No. 313. Defendants objected to submitting an interrogatory on future damages to the jury because they argued that an assessment of future damages is an issue for the Court to decide as a matter of law. Doc. No. 277, pg. 1; Doc. No. 317, pg. 3. However, Defendants contended that, if the jury was asked to determine future damages, the question should be put to the jury apart from a determination of past damages. Doc. No. 321, pg. 4. As a result of this protracted discussion, the Court determined that the jury should separately determine damages for past and future infringement. The Court further notified the Parties that the jury's determination of future damages would be advisory. Doc. No. 313, pg. 41, lines 4 and lines 19-22 ("I'll at least then have an advisory jury verdict. . . . . From the jury's standpoint, the concept of an advisory jury will not be discussed with them. They will just assume they are doing both pieces, the past and the future, and we'll go from there."). Based upon these determinations, Defendants were provided with an opportunity to supplement their expert report to address the appropriate measure of future damages. Doc. No. 322.

As noted, the jury awarded Plaintiff $4,016,050 for damages from July 1, 2015 through expiration of the patents, which is approximately $1.43 per unit. Doc. No. 371. Plaintiff, in this Motion, moves this Court to disregard the jury's verdict as to future damages and determine, consistent with Plaintiff's expert witness's opinion, that a higher per unit royalty is appropriate. Doc. No. 378.

Plaintiff, in essence, moves this Court to substitute its own judgment for that of the jury based upon essentially the same facts and evidence and apply a future royalty between $5 and $16 (the jury's royalty rate for past damages and Barnes's opinion of a reasonable royalty rate per unit for A.R. Drone and Bebop). In doing so, Plaintiff admits the jury, through its verdict, did not adopt Barnes's proposed rates of $16 and $6 per unit for either past or future damages (past damages verdict would equate to a $5 per unit royalty, future infringement damages of $1.43/unit) and acknowledges in its Motion that the Parties' damages conclusions were "widely divergent." Doc. No. 378, ¶ 2.

Plaintiff, in its Motion, does not assail the past damages verdict, presumably because the difference between Plaintiff's requested future damages and the jury's award for this period is much larger than that for past damages (approximately $13 million vs. $3.8 million). Doc. No. 379, pg. 7. Defendants, in response, argue that having to face a damages trial and a jury verdict is "punishment enough" and no future damages should be included in the final judgment because it is a form of equitable relief. If future damages are awarded, Defendants urge the Court to adopt the jury's verdict of $1.43/unit, for a total of $4,016,050. Doc. No. 392, pgs. 2-3.

A Court may employ equitable remedies for future infringement in the form of: (1) an injunction; (2) an order directing the parties to attempt to negotiate terms for future use of an

invention; or (3) an ongoing royalty. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012). A District Court may also conclude that no relief is appropriate. *Id.*

The Court finds that the jury's determination of damages for future infringement is appropriate. As noted, the jury was repeatedly focused on the *Georgia-Pacific* factors and the Parties presented their case through these factors. The jury actively engaged with these factors, including the expert witnesses' opinions, and applied the facts to the guiding principles, as demonstrated by the following questions, which were submitted to the Court during deliberations:

- May we please have the Barse and Jarosz expert reports?
- With regard to future royalty – will Parrot be allowed to use the technology in the [']071 Patent and the [']748 Patent in its future products through 2028 and 2030, for the appropriate patent, at the conclusion of this case, or will the parties have to negotiate a licensing agreement to cover the time period from the jury's verdict through the life of each patent?
- Will the Parties have to negotiate a licensing agreement for Parrot's future use of the patented technology to cover the time period from the jury's verdict through the life of each patent, regardless of what amount the jury awards[?]

Doc. No. 370.

Plaintiff contends that the jury's verdict for future damages should not be adopted because it does not account for the apparent $5/unit royalty rate incorporated in the past damages award. Doc. No. 379, pg. 8. As previously noted, the jury's verdict represents the consideration of a voluminous record based upon the applicable legal principles. The jury members necessarily rejected the Parties' positions, including Defendants' request that they award no future damages. Doc. No. 361, pg. 36, line 25-pg. 37, line 3 ("I suggest you start with the second piece of it, the future damages. They have to prove that, but all we have heard is speculation about the future, so that one should be easy, write in zero."). The verdict is not flawed because it does not comport with the Parties' positions or with the damages for past infringement.

To that end, the jury was not instructed or obliged to award past and future damages using the same reasonable royalty rate, and its varied rates for damages reflects the difficulty in determining an appropriate amount of damages, especially where sales have not yet occurred. The Court finds that in whatever manner it is described, be it an ongoing $1.43/unit reasonable royalty or a segment of a lump sum payment, the jury's future damages award reflects the *Georgia-Pacific* factors, the continually disputed patents and products, the unpredictable drone business, and the credibility determinations that underscore all of these considerations. This award is not meant either to "further" "punish" Defendants nor to reward Plaintiff for Defendants' unprecedented conduct. Rather, the Court finds that this reasonable award compensates Plaintiff for Defendants' future uncondoned use of its patents.

Therefore, Plaintiff's Motion for a Royalty for Future Infringement (Doc. No. 378) will be DENIED. Plaintiff's damages for infringement from July 1, 2015 through expiration of the patents are $4,016,050. Doc. No. 371, ¶ 2.

### B. Motion for Fees Under Rule 37 (Doc. No. 380)

In this Motion, Plaintiff timely moves for an award of reasonable expenses, including attorneys' fees, in connection with discovery disputes. Doc. No. 380 (requested amount: $174,702.00). Defendants object both to the imposition of fees pursuant to Rule 37 as well as the amount requested by Plaintiff. Doc. No. 390.

The expenses requested in this Motion were incurred over a four-month period and culminated in Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not be Held in Contempt and ultimately this Court's Order of Court entering default judgment against Defendants as to liability. Doc. Nos. 78, 106, 107. The following documents were filed by

Plaintiff, between June and November 2014, related to Defendants' failure to comply with

discovery obligations:

- Plaintiff's Motion to Compel Initial Disclosure Documents (June 19, 2014, Doc. No. 41), which was granted by this Court on July 1, 2014: Defendants were ordered to comply on or before July 9, 2014 (Doc. No. 48);
- Plaintiff's Response (Doc. No. 55) to Defendants' Emergency Motion for Reconsideration of this Court's July 1, 2014 Order (July 3, 2014, Doc. No. 51): Defendants' Motion was denied by this Court on July 8, 2014 (07/08/2014 Text Order);
- Plaintiff's Motion to Compel Defendants to Obey this Court's July 1, 2014 Order (July 22, 2014, Doc. No. 61), which was granted by this Court on July 25, 2014: Defendants were given until August 13, 2014, to comply with the July 1, 2014 Order (Doc. No. 63);
- Plaintiff's Response to Defendants' Emergency Motion to Modify the Protective Order (August 1, 2014, Doc. No. 64): Defendants' Motion was denied by this Court (August 7, 2014, Doc. No. 70);
- Plaintiff's Response (Doc. No. 76) to Defendants' Motion for Relief from the Court's Order Dated July 25, 2014, or in the Alternative, for a Stay Pending a Petition for Writ of Mandamus (August 13, 2014, Doc. No. 74): Defendants' Motion was denied by this Court (August 14, 2014, Doc. No. 77); and
- Plaintiff's Motion for Order to Show Cause Why Defendants Should Not Be Held in Contempt (August 18, 2014, Doc. No. 78), which was granted by this Court (November 3, 2014, Doc. Nos. 107-108) after a hearing (October 23, 2014) and briefing from the Parties (Doc. No. 102-103)

Federal Rule of Civil Procedure 37(a)(5)(A) provides that the Court must require the

party whose conduct necessitated the motion at issue or the attorney advising the conduct to pay

the movant's reasonable expenses in connection with the motion unless the motion was filed

before a good faith effort was made to resolve the dispute, the opposing party's actions were

substantially justified, or other circumstances would make an award of expenses unjust. The

same rule further provides that the Court must order a disobedient party, the attorney advising

the party, or both to pay reasonable expenses caused by the failure to obey a discovery order,

unless the failure was substantially justified or other circumstances would make an award unjust.

Fed.R.Civ.P. 37(b)(2)(C).

As noted throughout this Opinion, Defendants' conduct has stymied Plaintiff's prosecution of its claims and the administration of justice during the pendency of the Parties' dispute. Rule 37 sanctions are available "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent" and can be used to compensate the opposing party for the expense caused by the abusive conduct. *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976). Defendants' dilatory actions increased the financial, temporal, and mental costs of prosecuting this case and may serve to give small companies pause to file a complaint including claims for patent infringement, dissuade local law firms from representing these potential plaintiffs, and/or encourage defendants with sufficient resources to attempt to delay resolution of the case on the merits in order to "punish" opponents. Defendants' behavior and the risk of future similar behavior from other parties warrants an imposition of fees as both a punitive and deterrent measure.

These sanctions are necessary apart from the Court's entry of default judgment, which was the Court's only option when confronted with Defendants' extraordinary discovery actions. Otherwise, if such unprecedented behavior goes unsanctioned, the discovery process is reduced to a virtually useless optional component of litigation. This erosion is untenable because discovery is designed to prevent civil trials from being "carried on in the dark." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947); *see also United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958)("Modern instruments of discovery . . . together with pretrial procedures make trial less a game of blind man's bluff and more a fair contest.").

In accordance with the forthcoming accompanying Order, Plaintiff shall file a Petition pursuant to Federal Rule of Civil Procedure 37, including reasonable attorneys' fees and

expenses.  David White, Esq. will be appointed as Special Master and shall issue a Report and Recommendation to the Court on the appropriate total sum for these items.

### C.  Motion for an Order Awarding Pre-judgment Interest (Doc. No. 382)

35 U.S.C. § 284 provides for an award of pre-judgment interest as fixed by the Court. Plaintiff moves the Court to award pre-judgment interest from January 31, 2012 through the date of entry of judgment and moves that the interest be applied to past and future damages as well as any attorneys' fees awarded by the Court.  Doc. No. 382.

 "[P]rejudgment interest should ordinarily be awarded [to prevailing plaintiffs in patent litigation.]"  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); *Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1378 (Fed. Cir. 2010).  It is not a punitive measure.  *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1033 (Fed. Cir. 1996).  Rather, pre-judgment interest is designed to compensate a patent holder for the funds it would have obtained prior to judgment had infringement not occurred.  *Whiteserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 35 (Fed. Cir. 2012).

The United States Court of Appeals for the Federal Circuit has held that because the amount of pre-judgment interest is not unique to patent law, the law of the appropriate regional circuit is applicable.  *Tronzo v. Biomet, Inc.*, 318 F.3d 1378, 1381 (Fed. Cir. 2003) (citing *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347-48 (Fed. Cir. 1999)).  The United States Court of Appeals for the Third Circuit has recognized that interest should generally be awarded in patent litigation.  *See Poleto v. Consol. Rail Corp.*, 826 F.2d 1270, 1278 (3d Cir. 1987), *abrogated on other grounds*; *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990).

Four factors should be employed when determining if pre-judgment interest should be awarded:

(1) whether the claimant has been less than diligent in prosecuting the action;

(2) whether the defendant has been unjustly enriched;

(3) whether an award would be compensatory; and

(4) whether countervailing equitable considerations militate against a surcharge.

*Feather v. United Mine Workers of America*, 711 F.2d 530, 540 (3d Cir. 1983).

In this case, Plaintiff has been diligent in prosecuting the action despite Defendants' dilatory actions, Defendants have been unjustly enriched by this delay, including entry of a final judgment, and an award of pre-judgment interest would compensate Plaintiff for the delayed compensation due to Defendants' infringement.  There are no countervailing equitable considerations that mitigate against an award of pre-judgment interest.  Therefore, the Court finds that pre-judgment interest should be awarded.  This interest applies to the approximately $3.8 million awarded by the jury for past damages, but will not apply to future damages because an award of pre-judgment interest for future damages would be improperly punitive, rather than compensatory.

Mindful of the tension between the provision that an award of pre-judgment interest is not designed to be punitive in nature and a District Court's authority to award pre-judgment interest on attorneys' fees in cases of "bad faith or other exceptional circumstances," the Court will grant Plaintiff's motion for an award of pre-judgment interest on attorneys' fees and expenses.  *See Mathis v. Spears*, 857 F.2d 749, 761 (Fed. Cir. 1988).  Such an award is reasonable in light of the facts and circumstances of this case, aligns with other Courts who have awarded pre-judgment interest on attorneys' fees when a case presents instances of bad faith, and attempts to fully compensate Plaintiff for attorneys' fees that have been incurred in conjunction

this litigation. *See e.g. Stryker Corp. v. Zimmer Inc.,* 2013 WL 6231533 (W.D. Mich. Aug. 7, 2013*) aff'd in part, vacated in part, reversed in part on other grounds*: 782 F.3d 649 (Fed. Cir. 2015); *Raymond v. Blair*, 2012 WL 1135911 (E.D. La. Apr. 4, 2012); *Nilssen v. General Electric Co.*, 2011 WL 633414 (N.D. Ill. Feb. 11, 2011).

If pre-judgment interest is awarded, the Court has the discretion to award simple or compound interest. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995). If the Court awards compound interest, the Court may determine how often the interest should be compounded. *Studiengesellschaft Kohle v. Dart Indus., Inc.*, 862 F.2d 1564, 1580 (Fed. Cir. 1988).

As in other cases, the Court finds that a six percent statutory interest rate, the Pennsylvania statutory rate, will be applied and will be compounded quarterly from January 31, 2012 (the date of the hypothetical negotiation) through June 2015. *See University of Pittsburgh v. Varian Medical Systems, Inc.*, 2012 WL 1436569 (W.D. Pa. April 25, 2012) ("This Court finds that it is in the interest of justice to have a consistent rate at which pre-judgment interest is awarded, and that the local statutory rate is an appropriate benchmark.")("The Court finds that a quarterly remittance period is reasonable."). Application of this rate to the jury's verdict award does not necessitate further discovery.

Therefore, Plaintiff's Motion for an Order Awarding Pre-judgment Interest (Doc. No. 382) will be GRANTED IN PART AND DENIED IN PART. Plaintiff's Motion will be GRANTED in so far as Plaintiff seeks an award of pre-judgment interest on the award for past damages and attorneys' fees and expenses and will be DENIED as to a request for pre-judgment interest as applied to the award for future damages. An appropriate Order follows.

### D. Renewed Motion for an Exceptional Case Finding and an Award of Attorneys' Fees (Doc. No. 383)

35 U.S.C. § 285 provides that "the court in exceptional cases may award attorney fees to the prevailing party." In considering a motion for attorneys' fees pursuant to Section 285, a District Court must determine if the prevailing party has proved by clear and convincing evidence that the case is exceptional, and, if so, whether an award of attorneys' fees is justified. *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012). "A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions." *Brooks Furniture Mfg. v. Dutaillier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

Plaintiff moves this Court to find that this case is exceptional and award it attorneys' fees pursuant to 35 U.S.C. § 285, in the amount of $1,832,676.73.[2] Doc. No. 383. Both sides agree that this case may be described as "exceptional," but Defendants contend that it is Plaintiff whose conduct has made the case as such and caused Defendants to be subject to the "punishment" of a damages trial and verdict. Doc. No. 389, pg. 1; Doc. No. 392, pg. 3. Despite these protestations, it is Defendants' continued and flagrant refusal to comply with this Court's discovery orders and their obligations pursuant to the Federal Rules of Civil Procedure that has created the case's untenable procedural posture.

### i. This is an Exceptional Case under 35 U.S.C. § 285

By nature, litigation can be contentious and the Court recognizes the Parties' need to zealously advocate their positions. To this end, the Parties were not obligated to settle their

---

[2] Plaintiff previously moved for an exceptional case finding under 35 U.S.C. § 285 and for attorneys' fees in November 2014. Doc. No. 117. The Court denied this requested relief as premature and notified Plaintiff that this issue may be re-raised at the conclusion of the damages trial. 12/01/2014 Text Order.

dispute through a business solution or to concede to their opponent's position. However, in part because the public has an interest in the administration of justice in all matters, the Parties were required to comply with the Federal Rules of Civil Procedure and this Court's Orders, all of which were entered in an attempt to facilitate the "just, speedy, and inexpensive determination" of this matter. Fed.R.Civ.P. 1.

As noted by Plaintiff, the Supreme Court of the United States has held that an exceptional case is "simply one that stands out from others with respect to the . . . unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). Here, Defendants' litigation actions go beyond zealous advocacy and presented "this Court with the first instance of such tactical and pervasive defiance in a patent case." Doc. No. 106, pg. 16. As set forth in the Court's Memorandum Opinion Re: Plaintiff's Motion to Show Cause Why Defendants Should Not be Held in Contempt (Doc. No. 78), Defendants proactively and steadfastly refused to comply with Orders of Court and advanced inconsistent and presumably false positions, which resulted in extensive motions practice and repeated Court involvement with otherwise routine matters. Doc. No. 106. Defendants' systematic actions stymied both Plaintiff's prosecution of its claims and the Court's administration of this dispute and, after repeated Court action over a four month period, left no further option than to enter default judgment against Defendants as to infringement because further orders or monetary or other sanctions would be ineffective in obtaining Defendants' compliance with discovery obligations. See Doc. No. 106, Memorandum Opinion Re: Plaintiff's Motion for Order to Show Cause Why Defendant Should Not Be Held in Contempt (Doc. No. 78).

Even after this sanction, Defendants have refused to provide relevant documents (included a potentially crucial licensing agreement "Asia-Pacific License Agreement") and have attempted to impede this litigation through motions practice, including:

- Defendants' Motion to Dismiss for Lack of Standing (February 5, 2015)(Doc. No. 172);
- Defendants' Motion for Leave to File Affirmative Defense to Plaintiff's Damages Claims and Request for Equitable Relief Based Upon Unclean Hands (February 18, 2015)(Doc. No. 188); and
- Defendants' Motion for Summary Judgment (March 2, 2015)(Doc. No. 210)

In response to this Motion for Attorneys' Fees, Defendants continue to argue the merits of the finding of default judgment. Doc. No. 389. Defendants apparently believe that Plaintiff is a patent troll and any of its claims are without merit. Doc. No. 389, pg. 1 ("Plaintiff well knows any resolution on the merits would put an end to its scheme to shake down Parrot for millions of dollars.") The Court notes that in light of the deluge of patent suits that are initiated merely to recover unjustified settlements, this stance is not exceptional. *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 13-896 _ U.S. _ (May 26, 2015) ("[s]ome companies may use patents as a sword to go after defendants for money, even when their claims are frivolous."). To that end, the Court embraces its "authority and responsibility to ensure frivolous cases are dissuaded." *Id.* In conformance with this responsibility, the Court has been available to the Parties to resolve disputes and has entered Orders directing certain actions, where the Court found appropriate; the Parties are bound to comply with these orders. Defendants' failure to comply with repeated and varied Orders of Court results in an inescapable inference that Defendants have consciously and deliberately strategized to delay this litigation rather than have the dispute settled on the merits, which Defendants should have welcomed if Plaintiff were truly a meritless litigant. This dilatory and unreasonable conduct merits a finding that this case is exceptional pursuant to 35 U.S.C. § 285.

ii.     *An Award of Attorneys' Fees to Plaintiff is Appropriate*

Defendants' exceptionally disruptive actions in this matter:

- prevented Plaintiff from reviewing information prior to the October 24, 2014, claim construction hearing;
- caused Plaintiff to expend substantial funds, time, and energy on Motions to Compel and responses in opposition to Defendants' Motions on settled discovery issues;
- necessitated that Plaintiff incur further legal fees and costs to prepare a Motion to Show Cause Why Defendants Should Not be Held in Contempt and a resultant evidentiary hearing and argument; and
- inhibited Plaintiff's ability to prepare this case for trial

See Doc. No. 106, pg. 16.  As with each motion, the Court has reviewed the entire record of this case and has objectively applied the law to the best of its ability.  This process unfortunately leads to the inescapable finding that Defendants never intended to present their defenses in this forum and, instead, made every effort to obtain complete relief in their chosen venue, on their schedule, and on their terms.  Such a tactical strategy has prejudiced Plaintiff, inhibited a timely decision on the merits and this Court's administration of its docket, and violated the public's best interests.

Therefore, an award of attorneys' fees and expenses is appropriate and Plaintiff's Motion for an Exceptional Case Finding and an Award of Attorneys' Fees will be GRANTED.[3]  In accordance with the forthcoming accompanying Order, Plaintiff shall file a Petition for Attorneys' Fees and Expenses.  David White, Esq. will be appointed as Special Master and shall issue a Report and Recommendation to the Court on the appropriate total sum for these items.

---

[3] Plaintiff's request for expert witness fees (in the amount of $130,114.09) will be denied because the causal link between Defendants' conduct and the portion of Plaintiff's fees associated with its expert witness that would not have been incurred without Defendants' disruptive conduct cannot be determined. Doc. No. 385, pgs. 14-15.

*E.  Motion for Post-Judgment Interest (Doc. No. 386)*

Plaintiff moves this Court for an award of post-judgment interest on the damages and royalty award, attorneys' fees and expenses, and the total pre-judgment interest, at the rate set forth in 28 U.S.C. § 1961(a), compounded annually.  Post-judgment interest is "allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  This interest shall be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  Id.  Interest is computed daily and compounded annually.  28 U.S.C. § 1961(b).

Defendants object to this Motion only to the extent that interest would be computed for future damages beginning on the date of the judgment.  Doc. No. 391.  The Court has previously found that future damages in the amount of $4,016,050 is appropriate.  This sum will be included in the "money judgment" and will be subject to post-judgment interest.  Therefore, Plaintiff's Motion for Post-Judgment Interest (Doc. No. 386) will be GRANTED.

An appropriate Order follows.

### III.     Conclusion

Each party to a lawsuit has the right to vigorously pursue its position before this Court. Here, Defendants were provided with sufficient procedures and protections to receive a just, fair, and inexpensive determination of Plaintiff's claims and their defenses on the merits. However, the Court was constrained to enter default judgment as to liability against Defendants based upon their unprecedented actions from a very early stage. After careful consideration of Plaintiff's Post-Trial Damages Motions, the Court finds that the jury's award of $4,016,050 for damages from July 1, 2015 through expiration of the patents is an appropriate measure of future damages and will be adopted by the Court. Attorneys' fees and expenses will be awarded to Plaintiff pursuant to Federal Rule of Civil Procedure 37. Pre-judgment and post-judgment interest will also be awarded pursuant to 35 U.S.C. § 284 and 28 U.S.C. § 1961(a). Finally, based upon Defendants' actions, the Court finds that this case is exceptional and therefore, attorneys' fees and expenses will be awarded pursuant to 35 U.S.C. § 285.

An appropriate Order follows.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All Registered ECF Counsel and Parties